GREGORY S. GILCHRIST (Cal. Bar. No. 111536)
RYAN BRICKER (Cal. Bar No. 269100)
SOPHY J. TABANDEH (Cal. Bar No. 287583)
PAYMANEH PARHAMI (Cal. Bar No. 335604)
VERSO LAW GROUP LLP
565 Commercial Street, 4th Fl.
San Francisco, CA 94111
Telephone: (415) 534-0495
Email:  greg.gilchrist@versolaw.com
        ryan.bricker@versolaw.com
        sophy.tabandeh@versolaw.com
        paymaneh.parhami@versolaw.com

Attorneys for Plaintiff
LEVI STRAUSS & CO.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEVI STRAUSS & CO., <br><br> Plaintiff, <br><br> v. <br><br> PORTWEST UNLIMITED COMPANY, PORTWEST, LLC, and PORTWEST AMERICA, LLC, <br><br> Defendants. | Case No.: 5:24-cv-04994-NW <br><br> **JOINT CASE MANAGEMENT STATEMENT** <br><br> Judge:  Hon. Noël Wise |

Plaintiff Levi Strauss & Co. ("LS&Co.") and Defendants Portwest Unlimited Company, Portwest, LLC, and Portwest America, LLC (hereafter collectively "Defendants"), by and through their respective counsels of record, conferred on October 25, 2024, and jointly submit this second Joint Case Management Statement pursuant to the Clerk's Notice setting the case management conference (Dkt. 30), the Standing Order for All Judges of the Northern District of California, and Civil Local Rule 16-9.

**1.     Jurisdiction and Service:**

LS&Co.'s first, second, and third claims arise under the Lanham Act.  This Court has subject matter jurisdiction over those claims pursuant to 28 U.S.C. §§ 1331, 1338(a) and 1338(b) and 15 U.S.C. § 1121.  The Court has supplemental jurisdiction over LS&Co.'s fourth and fifth

state law claims for trademark infringement and dilution and unfair competition pursuant to 28 U.S.C. § 1367.  There are no issues regarding personal jurisdiction or venue as to Defendants Portwest LLC and Portwest America, LLC (Portwest Unlimited Company, an Irish company, reserves its rights to challenge personal jurisdiction), and all parties have been served.  LS&Co. disagrees that Portwest Unlimited Company can challenge personal jurisdiction given that it has appeared and served an Answer, thus waiving its right to challenge personal jurisdiction.

**2.     Facts:**

*LS&Co.'s Position*: Operating since approximately the 1850s, LS&Co. is one of the oldest and best-known apparel companies in the world.  LS&Co. is the owner of the distinctive and famous Tab trademark, which it uses in a variety of colors, both with and without the LEVI'S word mark (the "Tab trademark").  Every year, millions of jeans, shirts, jackets, and other products are sold bearing the Tab trademark.  LS&Co. has used the Tab trademark continuously since at least 1936.  LS&Co.'s Tab trademark became famous prior to Defendants' conduct that is at issue in this case.

LS&Co. claims that Defendants' use of tabs on apparel is confusingly similar to and dilutive of LS&Co.'s Tab trademark, and constitutes a violation of LS&Co.'s trademark rights and unfair competition under federal and California law ("Portwest Tab"). Portwest uses the Portwest Tab across a broad array of its clothing products, including products that are meant to be used as both protective clothing and casualwear.

The principal factual issues in dispute include the following.  This list is not meant to be final or exhaustive, and the parties reserve their rights to reformulate these issues or include other appropriate issues as they develop or become known to the parties through the course of discovery and investigation.  Furthermore, the characterization of an issue as factual is not necessarily a concession that it is not legal, or both factual and legal.

   a.   Whether Defendants have manufactured, promoted, and sold garments bearing tabs that are highly similar to LS&Co.'s Tab trademark.
   b.   Whether Defendants may assert "fair use" based on alleged non-trademark use when they concede to using a protruding tab on their garments.

     c.     Whether Defendants' use of the Portwest Tab is likely to cause confusion, mistake, or deception among consumers and potential consumers.

     d.     Whether Defendants intended to cause confusion, mistake, or deception among consumers and potential consumers.

     e.     Whether Defendants used, in advertising and promotion of their products in interstate commerce, depictions of their products that are false, misleading, or deceptive, and had a tendency to deceive a substantial segment of consumers viewing such advertising and promotion.

     f.     Whether Defendants' use of the Portwest Tab dilutes or is likely to dilute LS&Co.'s Tab trademark.

     g.     Whether LS&Co. has been damaged by Defendants' use of the Portwest Tab, and if so, to what extent.

*Defendants' Position*:

Established in 1904, Portwest manufactures workwear, safety wear, and personal protective equipment ("PPE"). Portwest does not sell traditional consumer, retail apparel; rather, its products are directed to the industrial workwear market.

There is no "Portwest Tab" or fashion label as described by the Plaintiff. Rather, certain Portwest products include safety information labels that are the subject of Plaintiff's claims. These safety information labels do not bear or display any Portwest branding, nor are they used in any trademark sense. To the contrary, the safety information labels typically display fire retardant ratings or electrical Arc ratings in conformity with standard safety guidelines applicable in the United States. Defendants' PPE gear that include these safety information labels tend to be of heavy duty fabric and materials that reduce flammability and protect the wearers from possible burns through inadvertent electrical contact. Defendants have sold their PPE products, including those with safety information labels, in the United States since 2014.

The principal factual issues in dispute include the following. This list is not meant to be final or exhaustive, and the parties reserve their rights to reformulate these issues or include other appropriate issues as they develop or become known to the parties through the course of discovery

and investigation. Furthermore, the characterization of an issue as factual is not necessarily a concession that it is not legal, or both factual and legal.

    a.    Whether rectangular tags have become so widely used in the clothing industry that Plaintiff's alleged "Tab" mark has now become generic.

    b.    Whether Defendants' use of a rectangular tab to display safety information, e.g., flame retardancy ratings, constitutes a trademark use that would qualify as "use in commerce" under the Lanham Act.

    c.    Whether Defendants' use of a rectangular label to display safety information, e.g., flame retardancy ratings, is likely to cause confusion, mistake, or deception among consumers and potential consumers of clothing, especially workwear, given that (i) LS&Co. only uses the tab as media to carry its imprinted branding, e.g., LEVI'S, and not in a trademark sense; (ii) that the channels of trade do not overlap, (iii) and they each target different consumer bases.

    d.    Whether Plaintiff is frivolously and intentionally misusing its trademark registration(s) to improperly restrain trade and expand the scope of its mark beyond that provided under trademark law.

    e.    Whether Defendants' use of a safety information label is fair use.

    f.    Whether Plaintiff unduly delayed in asserting its infringement claims against Defendants.

**3.   Legal Issues:**

*LS&Co.'s Position*: This list is not meant to be final or exhaustive, and the parties reserve their rights to reformulate these issues or include other appropriate issues as they develop or become known to the parties through the course of discovery and investigation. Furthermore, the characterization of an issue as legal is not necessarily a concession that it is not factual, or both factual and legal.

    a.    Whether Defendants' use of the Portwest Tab constitutes infringement and/or dilution of LS&Co.'s Tab trademark and unfair competition under the Lanham Act, 15 U.S.C. § 1051 et seq.

      b.      Whether Defendants' use of the Portwest Tab constitutes infringement and/or dilution of LS&Co.'s Tab trademark and unfair competition under California law.

      c.      Whether LS&Co. is entitled to damages, injunctive relief, and/or an accounting of and recovery of Defendants' profits.

*Defendants' Position*:

Plaintiff has filed this civil action essentially claiming trademark infringement and unfair competition. In the Complaint, Plaintiff identified nine separate federal trademark registrations and one California state registration. However, the Complaint does not assert infringement of any of the alleged trademarks, but rather asserts that Defendants have infringed the "LS&Co.'s Tab Trademark," which appears to be some type of amalgamation of all of the marks collectively. This is not something recognized in the law. In order to establish trademark infringement, trademark dilution, or unfair competition under the Lanham Act, the analysis must be conducted on each asserted trademark.

Defendants also note that since this case has only just begun, there are likely to be other legal issues that arise as the case proceeds to discovery. Accordingly, Defendants reserve the right to assert additional legal issues to the extent it becomes necessary to do so. At this stage, Defendants note the following questions of law:

      a.      Whether Plaintiff has a legal basis to assert intellectual property claims on an amalgamation of nine separate trademarks asserted to constitute the alleged "LS&Co.'s Tab Trademark," rather than each trademark individually.

      b.      Whether Defendants' products infringe or dilute any of the nine federal registrations identified in Plaintiff's Complaint and whether unfair competition under the Lanham Act can be found with respect to any of the nine federal registrations.

      c.      Whether Defendants' products infringe or dilute Plaintiff's California Trademark Registration asserted in the Complaint and whether unfair competition under California law can be established.

      d.      Whether Plaintiff unduly delayed in asserting its infringement claims against

Defendants and those claims are consequently barred by the doctrine of laches.

**4.     Motions:**

*LS&Co.'s Position*: LS&Co. may file a summary judgment motion on one or more of its infringement and unfair competition claims, depending on what is learned in discovery. In addition, LS&Co. may file discovery motions in the event the parties are unable to resolve discovery disputes after meeting and conferring.

*Defendants' Position*: Defendants anticipate filing one or more motions for summary judgment after the close of discovery.

**5.     Amendment of Pleadings:**

*LS&Co.'s Position*: LS&Co. does not anticipate amending its complaint at this time, but reserves the right to amend based on information learned during the course of litigation. In the event that pleadings are amended after the commencement of discovery, LS&Co. recognizes that a revised discovery schedule may be required.

*Defendants' Position*: Defendants do not anticipate amending their answer at this time, but reserve the right to amend based upon information gathered through discovery.

**6.     Evidence Preservation:**

The parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information ("ESI Guidelines"), and have met and conferred pursuant to Fed. R. Civ. P. 26(f) regarding reasonable and proportionate steps taken to preserve evidence relevant to the issues reasonably evident in this action.

**7.     Disclosures:**

The parties have exchanged initial disclosures pursuant to Fed. R. Civ. P. 26.

**8.     Discovery:**

The parties do not propose any changes to the discovery limits in Fed. R. Civ. P. 26(f), or any phases to the discovery process. The parties will exchange documents in PDF format on core topics such as LS&Co.'s rights in the Tab trademark, including LS&Co.'s use of the Tab trademark, and Defendants' use of the Portwest Tab, including sales, marketing, and distribution

1   information. After that, the parties will determine whether limited or no ESI discovery is
2   necessary.

3   LS&Co. served an initial set of written discovery and document requests. Defendants
4   failed to respond timely.  LS&Co. has taken the position that Defendants have waived their right
5   to assert objections.  On February 5, 2025, Defendants served responses to the discovery requests
6   that include a multitude of responses LS&Co. believes are evasive.  On February 26, 2025,
7   LS&Co. sent a meet and confer letter prior to filing a motion to compel, but received no response
8   until March 7, 2025, at which time it was notified that  Defendants retained additional trial counsel
9   of record (Pranger Law), who filed Notices of Appearances on March 11, 2025. (Dkt Nos. 33-34.)
10  Defendants filed a motion to substitute Pranger Law as lead trial counsel on March 14, 2025. (Dkt.
11  No. 35.)  Defendants' new trial counsel are still getting up to speed on the case status, including
12  the state of previously served discovery and have informed LS&Co. that other counsel will
13  withdraw at some point, though this has not occurred to date.  LS&Co.'s counsel and Defendants'
14  new counsel recently engaged in an initial introductory call.  At the request of Defendants' new
15  counsel, LS&Co.'s counsel agreed to give Defendants' new counsel a short period of time to get
16  up to speed on the discovery issues so that they parties can engage in a substantive meet and
17  confer conference in the hope of avoiding a motion to compel.  To date, Defendants have not
18  served any documents in response to LS&Co.'s document requests.

19  **9. Class Actions:**
20  This is not a class action.

21  **10.    Related Cases:**
22  There are no related cases or proceedings pending.

23  **11.    Relief:**
24  *LS&Co.'s Position*: LS&Co. will seek injunctive relief, and damages for Defendants'
25  violations of LS&Co.'s trademark rights.  Given that discovery has just begun, LS&Co. is unable
26  to compute damages at this time.  LS&Co. will seek recovery of its attorneys' fees.  To the extent
27  that discovery confirms that Defendants' conduct was willful, LS&Co. will seek recovery of
28  extraordinary damages as well.

1  *Defendants' Position*: The Defendants reserve the right to seek relief in the form of attorneys' fees and/or cancellation of one or more of the Plaintiff's trademarks depending upon information learned in discovery.

### 12. Settlement and ADR:

*LS&Co.'s Position*: LS&Co. made a settlement proposal to Defendants. Defendants did not respond. The parties participated in mediation on February 13, 2025. The parties did not reach a settlement. Key discovery necessary to position the parties to negotiate a resolution is described in Section 8 above.

*Defendants' Position*: The parties participated in mediation with a Court-appointed mediator on February 13, 2025. The parties did not reach a settlement. The mediator remains involved in settlement discussions and proposed that further negotiations be conducted by May 23, 2025.

### 13. Other References:

The parties do not believe that the case is suitable for reference to a binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

### 14. Narrowing of Issues:

The parties do not believe that the issues in dispute can be narrowed or expedited.

### 15. Scheduling:

The Court conducted the Initial Case Management Conference on November 19, 2024, and issued the case Scheduling Order (Dkt. No. 26) on November 20, 2024. The initial Scheduling Order adopted the following discovery and court dates:

| | |
|---|---|
| Fact Discovery Cutoff | June 23, 2025 |
| Initial Expert Disclosures | August 4, 2025 |
| Rebuttal Expert Disclosures | September 1, 2025 |
| Expert Discovery Cutoff | September 29, 2025 |
| Deadline to Hear Dispositive Motions | December 11, 2025 |
| Pretrial Conference Statement Due | February 13, 2026 |
| Pretrial Conference | February 30, 2026 at 2:00 PM |

| Trial | March 16, 2026 |

**16. Trial:**

The parties anticipate the trial will last four to six court days and each party seeks a trial by jury.

**17. Disclosure of Non-party Interested Entities or Persons:**

*LS&Co.'s Position*: LS&Co. has filed the "Certification of Interested Entities or Persons" required by Civil Local Rule 3-15. As of this date, other than the named parties, there is no such interest to report.

*Defendants' Position*: Defendants state that there are no non-party Interested Entities or Persons applicable to this matter.

**18. Professional Conduct:**

All attorneys for both parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

**19. Such other matters as may facilitate the just, speedy and inexpensive disposition of this matter.**

LS&Co. consented to Magistrate Judge jurisdiction. Dkt. 8.

**20. Additional Matters per Dkt. 30:**

    **(i)    a list or description of each party;**

Plaintiff LS&Co. is one of the oldest and best-known apparel companies in the world. It manufactures, markets, and sells a variety of apparel in connection with its famous trademarks, including the Tab trademark.

Defendants are manufacturers of personal protective equipment, including heavy duty work wear that is fire retardant and electrical arcing resistant in conformity with industry safety standards. Unlike Plaintiff, Defendants do not market themselves as consumer apparel companies.

    **(ii)    a summary of all claims, counter-claims, cross-claims, or third party claims and the date the complaint and cross-complaint(s) were filed; and;**

Plaintiff LS&Co. has asserted federal and state law claims for trademark infringement,

dilution, and unfair competition. The Complaint was filed on August 9, 2024.

    **(iii) a brief procedural history of the case (chart format welcomed) including, but not limited to, any ADR proceedings or settlement conferences that have been scheduled or concluded and any appellate proceedings that are pending or concluded.**

  The Complaint was filed on August 9, 2024. Defendants filed an Answer to the Complaint on September 12, 2024. The Court held an initial case management conference on November 19, 2024. The parties participated in mediation on February 13, 2024, but were unable to reach an amicable resolution.

              Respectfully submitted,

              VERSO LAW GROUP LLP

Dated: March 17, 2025      By: */s/Sophy Tabandeh*
               Gregory S. Gilchrist
               Ryan Bricker
               Sophy Tabandeh
               Paymaneh Parhami

              Attorneys for Plaintiff
              LEVI STRAUSS & CO.

Dated: March 17, 2025      By: */s/Eugene L. Hahm/*
              Eugene L. Hahm
              Pranger Law PC
              88 Guy Place, Suite 405
              San Francisco, CA 94105
              (415) 885-9800
              ehahm@prangerlaw.com

              Attorneys for Defendants
              PORTWEST UNLIMITED COMPANY,
              PORTWEST, LLC, and PORTWEST
              AMERICA, LLC

**SIGNATURE ATTESTATION**

I attest that concurrence in the filing of this document has been obtained from each of the other signatories, which will serve in lieu of their signatures on the document.

Dated: March 17, 2025

                                                     */s/ Sophy Tabandeh*
                                                    *Sophy Tabandeh*